IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RONNIE M., | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-CV-1089-SMY |
| | ) |
| KILOLO KIJAKAZI, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
|        Defendant. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff Ronnie M. seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

### Procedural History

Plaintiff applied for DIB on October 30, 2014, alleging a disability onset date of January 19, 2014 (Tr. 184). His claim was initially denied on June 26, 2015 (Tr. 108-109) and denied again on reconsideration on October 2, 2015 (Tr. 114).

Plaintiff requested an evidentiary hearing which took place on July 26, 2017 (Tr. 54). Following the hearing, the Administrative Law Judge ("ALJ") denied Plaintiff's application on November 15, 2017 (Tr. 46). The Appeals Council denied Plaintiff's request for review on April 16, 2019, making the ALJ's decision the final agency decision subject to judicial review (Tr. 1).

Plaintiff filed a Complaint with this Court that was initially deemed untimely and dismissed. *Ronnie McGhee v. Commissioner of Social Security*, No. Civ. 19-cv-677-GCS (S.D.Ill. May 13, 2020). Subsequently, the Social Security Administration granted Plaintiff more time to file this instant lawsuit pursuant to 20 C.F.R. § 404.982 (Tr. 25). Defendant does not dispute that this lawsuit was timely filed.

## Issues Raised by Plaintiff

Plaintiff raises the following issues for judicial review:

1. The ALJ erred when he concluded that claimant had engaged in substantial work activity without providing sufficient evidence for that conclusion.

2. The ALJ erred by discrediting claimant's testimony that he had not returned to work of any kind after his alleged onset date.

3. The ALJ improperly credited the opinion of claimant's treating neurosurgeon.

## Legal Standard

To qualify for Disability Insurance Benefits, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

In determining whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his or her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R.

§ 404.1520. An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). Thus, the Court is not tasked with determining whether Plaintiff was disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for substantial evidence, the Court considers the entire administrative record, but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). At the same time, judicial review is not abject; the Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### Decision of the ALJ

The ALJ followed the five-step analytical framework with respect to Plaintiff's application. While he determined that Plaintiff had not worked at the level of substantial gainful activity since the alleged onset date, he found it more likely than not he had performed substantial work activity (Tr. 37). He found that Plaintiff had the following severe

impairments: status post lumbar fusion surgery in October 2014; multilevel cervical degenerative disc disease with radiculopathy; and status post cervical fusion surgery in November 2015 with residual myelomalacia (Tr. 38). He concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of impairments listed in 20 C.F.R. Part 404, including finding that Plaintiff's cervical and lumbar spine disorders had not resulted in compromise of a nerve root or spinal cord (Tr. 38-39).

The ALJ determined that Plaintiff had the following Residual Functional Capacity ("RFC"):

> The claimant had the residual functional capacity to perform light exertional work (SSR 83-10). He could sit, stand, or walk about 6 hours each in an 8-hour workday, with normal breaks. He could push and pull to the extent of his lifting and carrying capacity. The claimant could occasionally climb ladders, ropes, or scaffolds. He could occasionally stoop. He could frequently crawl.

(Tr. 39)

He credited Plaintiff's testimony and determined that he was unable to perform any past relevant work, including work as an appliance delivery truck driver, material handler, machine paint mixer, and machinery erector (Tr. 44-45). However, the ALJ ultimately concluded that Plaintiff was not disabled because based on the RTC of light exertional work (SSR 83-10), he was able to perform the jobs of car rental deliverer, lot attendant, and route delivery clerk (Tr. 46).

## The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

**Agency Forms**

Plaintiff was born in 1964 and was 49 years old on the alleged onset date of January 19, 2014 (Tr. 184). He filed for disability based on "back injury, spinal injury with steel rods, [and] cadaver bones" (Tr. 94).

**Evidentiary Hearing**

Plaintiff was represented by counsel at his hearing on July 26, 2017 (Tr. 52) and testified to the following: His last work was in 2012 for mining company Coal Age (Tr. 58). He had been laid off but could not return to work because of a "broken back" he sustained when he slipped and fell on his front porch (Tr. 58, 59). That incident in January of 2014 led to lumbar surgery with Dr. Fleming (Tr. 62). Plaintiff continued having pain and underwent a cervical surgery as well (Tr. 62-63). He uses a cane to ambulate but it was not prescribed by a doctor (Tr. 64). Plaintiff denied working as a painter and stated that playing guitar was a hobby (Tr. 58-59). He has difficulty playing the guitar and standing (Tr. 63, 66). He lays down for most of the day and takes Tramadol for pain (Tr. 69-71).

Dr. Lloyd, the vocational expert, testified that Plaintiff could not perform his past work but there are jobs that someone with Plaintiff's limitations could perform, including car rental deliverer, lot attendant, route delivery clerk, and laundry worker (Tr. 73-74). Plaintiff's counsel examined Dr. Lloyd about whether Plaintiff could qualify for sedentary jobs that utilize his past work experience (Tr. 77). Dr. Lloyd opined that Plaintiff could use his knowledge of vehicles and process knowledge to work as a taxi cab starter and a routing clerk (Tr. 77-78). Plaintiff's attorney objected to Dr. Lloyd's testimony that Plaintiff had the skill to route taxi cabs, and he was overruled (Tr. 80). Dr. Lloyd then explained his methodology for determining that Plaintiff could qualify for a taxi cab starter job (Tr. 81).

**Relevant Medical Records**

Plaintiff first went to the Family Healthcare Clinic on January 21, 2014, complaining of back pain from a fall at his home approximately one month prior (Tr. 352). On the same day, Plaintiff underwent an X-ray of the lumbar spine at Franklin Hospital that showed no acute fracture or subluxation (Tr. 355).

On February 10, 2014, during an ER visit to Herrin Hospital, Plaintiff had an X-ray of his lumbar spine that revealed significant facet arthropathy lower lumbar spine and lumbosacral junction, with an anterior spondylolisthesis of L4 on L5 by about 5.3 mm (Tr. 388).

On February 11, 2014, Plaintiff went to Johnston City Community Health Center complaining of worsening lower back pain that radiates to the left thigh; he reported that he fell down a step a few weeks prior to the visit (Tr. 400).

On February 17, 2014, Plaintiff began treating at Outpatient Rehabilitation Services where he was diagnosed with low back pain with radiation to left leg (Tr. 363). He was recommended to perform core strengthening exercises and other non-surgical physical therapy (Tr. 363).

On February 25, 2014, Plaintiff returned to Johnston City Community Health Center; it was noted that the problem is improving, although Plaintiff still had pain with sudden and twisting movements (Tr. 403).

On March 17, 2014, Plaintiff had an MRI of his lumbar spine that revealed lumbar spine mild spondylosis, with mild central canal stenosis at L3-4, moderate/marked central canal stenosis at L4-5, and multilevel foraminal stenosis as described (Tr. 387).

On July 24, 2014, Plaintiff had a check-up at the Brain and Spine Institute and complained of severe back pain while working as a carpenter (Tr. 467).

On July 28, 2014, Plaintiff had an X-ray of his lumbar spine that reveled multilevel degenerative disc disease, greatest at L4-5, with an additional multilevel facet arthropathy, greater in the lower lumbar spine (Tr. 358).

On September 8, 2014, Plaintiff reported work as a carpenter during a check-up at the Brain and Spine Institute (Tr. 485).

On October 7, 2014, Plaintiff underwent a lumbar decompression and fusion at L4-5 at the Memorial Hospital of Carbondale with Surgeon Mark Fleming, M.D. (Tr. 431). His preoperative and postoperative diagnosis was lumbar stenosis with lumbar spondylolisthesis at L4-5 (Tr. 431). Following surgery, he had a CT scan of his lumbar spine that showed multilevel degenerative change of the spine with most pronounced level that is well visualized, being L3-L4 with mild central and moderate left neural foraminal narrowing; and interval fusion of the L4 on L5 with mild anterolisthesis of L4 on L5 with disc spacer device (Tr. 438).

On October 24, 2014, Plaintiff had a post-surgery follow up at the Brain and Spine Institute during which he noted that he is doing well and no longer had any lower back or leg pain; he had stopped taking his medications (Tr. 474).

On December 12, 2014, Plaintiff had a follow up at the Brain and Spine Institute during which he indicated that he was doing well (Tr. 490). On the same day, he had an X-ray of his lumbar spine that revealed a stable L4-5 interbody fusion, with residual spondylolisthesis (Tr. 418).

On October 9, 2015, Plaintiff had an MRI of his cervical spine that revealed cervical spondylosis superimposed on congenital narrowing of the central canal (most severe at the C6-

C7 disc space) and multilevel foraminal stenosis as described above secondary to uncovertebral joint degeneration (also most severe at the C6-C7 disc space) (Tr. 878).

On November 11, 2015, Plaintiff presented again to the Brain and Spine Institute for an evaluation of his neck. He stated that he had felt a pop in his neck and had pain and paresthesia radiating into his triceps and the fourth and fifth digits of both hands (Tr. 552). Notes indicate that Plaintiff is a painter and guitarist (Tr. 559). On the same day, Plaintiff had an X-ray of the cervical spine that showed mild degenerative disease of the lower cervical spine with no compression fracture or change in alignment during flexion or extension (Tr. 872).

On November 13, 2015, Plaintiff met with Surgeon Mark Fleming, M.D. to discuss a cervical surgery (Tr. 557).

On November 24, 2015, Plaintiff underwent a cervical discectomy and fusion at C5-6 and C6-7 with Surgeon Mark Fleming, M.D. (Tr. 863). His preoperative and postoperative diagnoses were cervical stenosis with radiculopathy and cervical herniated nucleus pulposus (Tr. 863).

On December 9, 2015, Plaintiff had a postoperative follow up at the Brain and Spine Institute and reported significant improvement of right leg weakness and that he was walking with a cane (Tr. 567).

Plaintiff attended rehabilitation at the Southern Illinois Healthcare Rehabilitation Institute of Chicago. On December 22, 2015, he noted that he played guitar often for extra money and that he used to work as a carpenter but had been laid off for a year (Tr. 787).

On January 23, 2016, Plaintiff had a follow up with Surgeon Mark Fleming at the Brain and Spine Institute. It was noted that Plaintiff's gait had improved and that he had been playing guitar (Tr. 576).

On April 19, 2017, Plaintiff went to the Saint Francis Medical Center for follow up. He reported neck pain with no issues walking (Tr. 928). Brandon Scott, D.O., concluded that there can be no further surgical intervention, but that Plaintiff would benefit from physical therapy (Tr. 930).

### State Agency Consultants' Opinions

The ALJ relied on two state consultants in his decision. On March 24, 2015, Dr. Rock Oh reviewed the evidence and opined that Plaintiff has a few limitations, but that he had unlimited ability to climb, balance, kneel and crouch (Tr. 88-89).

On September 30, 2015, Dr. Sharon Eder reviewed the evidence and opined that Plaintiff had some residual spondylolisthesis, but that a CT exam showed progress with his lumbar fusion. Dr. Eder found that Plaintiff had exertional limitations, standing or walking for 6 hours in an 8-hour workday (Tr. 101-102).

### Discussion

Plaintiff's contentions that the ALJ erred when he concluded that Plaintiff had engaged in substantial work activity without providing sufficient evidence for that conclusion and by discrediting his testimony that he had not returned to work of any kind after his alleged onset date are contradicted by the record. Although the ALJ noted that the Plaintiff was "repeatedly presenting for treatment reporting to his doctors that he was working as a carpenter," he nevertheless found that there is no "firm evidence of substantial gainful activity, with earnings exceeding the monthly substantial gainful activity amounts for the respective periods" (Tr. 37-

38). Thus, he actually found in Plaintiff's favor that he did not engage in substantial gainful activity (Tr. 37-38). Moreover, medical records showing that Plaintiff reported he had worked as a carpenter and played guitar after his surgeries were substantial evidence supporting the ALJ's conclusion. *Gedatus v. Saul,* 994 F.3d 893, 900 (7th Cir. 2021).

Plaintiff's remaining contention, that the ALJ improperly credited the opinion of his treating neurosurgeon, Mark Fleming M.D., that Plaintiff could perform "non-strenuous" work (Tr. 541) is inconsistent with the record. The ALJ credited the opinions of the State agency's medical consults, B. Rock Oh, M.D., and Sharon Eder, M.D. (Tr. 39-40). Dr. Oh analyzed the medical evidence and pointed to the "evidence of progressing fusion and ability to do non-strenuous work endorsed by Mark Fleming, M.D., the claimant's treating orthopedic surgeon" (Tr. 40). Relatedly, the ALJ noted, "The undersigned has considered the claimant's alleged inability to perform the light work endorsed by Dr. Oh or Dr. Fleming" (Tr. 40). He went on to note, "Subjective reports and objective clinical findings in the claimant's treatment records show these conditions stabilizing to an extent consistent with performing the range of light work endorsed by Dr. Eder" (Tr. 41). The ALJ properly considered Dr. Oh's analysis of Fleming's findings and Dr. Eder's finding before concluding that Plaintiff had a light work RFC; this Court defers to his judgment. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

## Conclusion

After a careful review of the record, the Court finds that ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability

benefits is **AFFIRMED**.  The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant.

    **IT IS SO ORDERED.**

    **DATED:  August 29, 2022**

                                                **STACI M. YANDLE**
                                                **United States District Judge**